IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Shauna Ashmon; Genecia Drayton, | C/A No. 3:23-5228-SAL-PJG |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION** |
| Cpl. Zalenski; M.D. Tyler Wolfe; Gen. Robert Harris; Deputy Christopher Blackmon; Richland County Sheriff's Department, | |
| Defendants. | |

The plaintiffs, Shauna Ashmon and Genecia Drayton, filed this civil rights case pursuant to 42 U.S.C. § 1983. They allege violations of their Fourth and Fifteenth[1] Amendment rights and state tort claims. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendants' motion for summary judgment (ECF No. 29), to which the plaintiffs responded and the defendants replied. (ECF Nos. 35, 41.) Having reviewed the parties' submissions and the applicable law, the court finds that the defendants' motion should be granted.

**BACKGROUND**

The facts in this case are largely undisputed; however, to the extent they are in dispute, the facts are taken in the light most favorable to the plaintiffs, to the extent they find support in the record. On July 16, 2023, Defendants Zalewski[2] and Wolfe, deputies with the Richland County

---

[1] It appears the plaintiffs intended to raise a Fourteenth Amendment claim rather than a Fifteenth Amendment claim, as the Fifteenth Amendment addresses voting rights.

[2] Although listed in the Complaint as Defendant Cpl. Zalenski, the parties agree that the correct spelling of the defendant's last name is Zalewski.

Sheriff's Department, were on patrol when they received information from the FLOCK safety system[3] of a stolen plate with tag numbers "VED953." Defendant Zalewski stated that the image captured of the license plate was indistinct and he could confirm only that the letters and numbers of the plate were black and legible; however, the perimeter of the plate was blurry. He was also able to identify the vehicle as a white Toyota Camry. Zalewski performed a check in the National Crime Information Center ("NCIC") system, confirmed the license plate was stolen, and began patrolling the area for the vehicle. It is undisputed that, on the date of the incident, a South Carolina tag bearing VED953 was a license plate that NCIC listed as stolen.

Meanwhile, the plaintiffs were leaving the Summit neighborhood—where Plaintiff Drayton lived—in Plaintiff Ashmon's vehicle to meet some friends for a Bingo event. Zalewski spotted Ashmon's vehicle—a white Toyota Camry—and advised Wolfe that he had located the vehicle with the license plate bearing VED953. Wolfe received an NCIC notification that VED953 was stolen, but before investigating the notification further Wolfe activated his blue lights to rendezvous with Zalewski and assist him with a "felony stop."[4]

Plaintiff Ashmon was driving and Plaintiff Drayton was in the front passenger seat when Defendant Zalewski pulled up behind the plaintiffs' car acting as the cover officer, while Defendant Wolfe pulled in front of the car acting as the contact officer. Wolfe immediately jumped

---

[3] Defendant Wolfe testified that this system photographs license plates through cameras on the public streets. If there is an issue with the plate, then the FLOCK system will alert officers by sending a message to their cellphones and patrol car computers. The system provides the officers with the time the photo was taken, location of the camera taking the photo, direction the vehicle is traveling, and the tag number.

[4] The officers stated that a "felony stop" was warranted because a stolen plate on a car indicates a high likelihood that the vehicle is stolen.

out of his car and withdrew his sidearm.[5]  Defendant Wolfe then loudly and clearly directed the plaintiffs to put their hands out of the windows and asked them who was in the back seat.  When the plaintiffs responded "no one," Wolfe directed the Ashmon to take the keys out of the car and then stated, "On the ground."  The plaintiffs began unbuckling their seatbelts and exited the car.  Wolfe then approached Plaintiff Drayton while Zalewski approached Ashmon.  Drayton asked Wolfe if she should be on the ground and Defendant Wolfe clarified that he meant for the keys to be on the ground.  He informed Drayton that she was being detained and began to handcuff her, stating that he would explain everything in a minute.  He told Drayton that the handcuffs "come off as easy as they go on."  Wolfe asked her to not mind his shakiness because he had just been driving pretty fast to catch up to them.  He further informed her that she was not in trouble right now but he was placing her in the backseat of his vehicle and turning on the air conditioning due to the heat outside.  Once Drayton was seated in the backseat of Wolfe's patrol car, Wolfe informed her that the license plate on the Camry was listed as stolen.  Drayton explained that Ashmon had just picked her up from her house to go to a Bingo event.  Wolfe said they were "coming out like that" because if the tag is stolen then there is a good chance that the vehicle is also stolen.  He expressed appreciation for the plaintiffs' cooperation and asked for Drayton to give the officers time to work through this matter.  He closed her in the backseat of his vehicle and then walked over to Zalewski and Ashmon.

While Wolfe was interacting with Drayton, Zalewski was with Ashmon.  After the plaintiffs exited the Camry, Zalewski approached Ashmon and removed her car keys from her hand, placing them on top of the Camry.  He told Ashmon that he would explain what was going

---

[5] It is disputed whether Wolfe's weapon was held at a "low ready" position or initially pointed at the plaintiffs.

on in a second and placed Ashmon in handcuffs. Zalewski informed Ashmon that the license plate on her vehicle was coming back as stolen and as associated with a different car. Zalewski asked Ashmon if the Camry belonged to her and if she was from Alaska, to which Ashmon responded in the affirmative. Zalewski said there may be a miscommunication, but in their system the license plate is showing as stolen. He asked her to bear with him and that she was just being detained and was not under arrest. Zalewski had Ashmon stand by the trunk of her Camry because he did not have any room in his car for her.

Soon after, Wolfe walked over and Zalewski asked Ashmon if she had her identification. Ashmon directed the officers to her purse in the backseat, and Wolfe retrieved it. He apparently located Ashmon's military identification and asked if her spouse in the military, to which she responded he had just retired. Wolfe located her driver's license and handed it to Zalewski. Wolfe asked Ashmon if Zalewski explained why they were there, while Zalewski returned to his vehicle to run a check on Ashmon's driver's license. At this time Defendants Harris and Blackmon arrived in their patrol cars along with Sergeant Walmsley ("Sergeant").[6] Wolfe directed Ashmon to the backseat of Blackmon's car, stating he wanted to get her out of the heat and into some air conditioning.

While Zalewski was verifying Ashmon's driver's license, the Sergeant queried whether it was a North Carolina plate they were looking for, and both Wolfe and Zalewski responded that it was a South Carolina plate that was stolen. The Sergeant asked if this was not the correct plate then why was Ashmon in handcuffs. Ashmon's plate was an Alaska Veteran license plate—not a South Carolina license plate. Wolfe indicated that Zalewski initiated the stop. The Sergeant stated that the officers needed to verify the plates before making a traffic stop. Zalewski re-entered the

---

[6] The Sergeant's last name is referred to by the plaintiffs as "Womsley."

plate as an Alaska tag and confirmed Ashmon's plate was not the stolen license plate. Wolfe returned to Ashmon, asked about her registration, and had her step out of the patrol car. Ashmon was visibly upset when she was released from the patrol car, and the handcuffs of both plaintiffs were then removed. Wolfe explained to Drayton that Alaska uses the same letter and number format on its plates as South Carolina, and that the South Carolina version of this plate was stolen.

When Zalewski returned Ashmon's driver's license, Ashmon stated that she had proof of registration in the car, which she had owned for five years. She was tearful and expressed her opinion that something should be done about the incident. Zalewski apologized and provided Ashmon the name of each of the officers present. Ashmon again questioned why she was not asked for her registration and instead immediately placed in handcuffs. Blackmon explained that for a stolen vehicle, officers treat those as a felony stop.

From the time of the stop to when the plaintiffs were released from handcuffs, approximately five minutes elapsed.

The plaintiffs filed this civil rights action on October 19, 2023, raising § 1983 claims as well as several state law claims against the individual officers and Richland County Sheriff's Department. The defendants have moved for summary judgment as to all of the claims asserted, and in response the plaintiffs concede that Defendants Harris, Blackmon, and Richland Country Sheriff's Department are entitled to summary judgment as to all claims, and that all defendants are entitled to summary judgment on the state law claims. (Pls.' Resp. Opp'n Summ. J. at 15 n.3, ECF No. 35 at 15) (stating that the plaintiffs "concede[ ] that the other arguments made in Defendant's Motion for Summary Judgment have merit and ask[ ] the court to focus it[s] determination on the arguments made regarding Defendants Zalewski and Wolfe's liability under 42 U.S.C. §1983 and the qualified immunity defense."). The plaintiffs' opposition argues only that a reasonable jury

could find that Defendants Zalewski and Wolfe violated the plaintiffs' Fourth Amendment rights and that the defendants are not entitled to qualified immunity on this claim. Accordingly, the Fourth Amendment claim is the only one remaining before the court.

### DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by

the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.

**B.      Defendants' Motion**

   **1.      Generally**

The defendants advance numerous grounds in support of their motion for summary judgment. As stated above, in response, the plaintiffs concede that the majority of the defendants' arguments are meritorious and request only that summary judgment be denied as to their § 1983 claim against Defendants Zalewski and Wolfe, and the associated qualified immunity defense. The plaintiffs' response is limited to their allegations that these defendants violated their rights under the Fourth Amendment. Accordingly, the court finds that Defendants Blackmon and Harris, as well as the Richland County Sheriff's Department are entitled to summary judgment. Similarly, the defendants are entitled to summary judgment on the plaintiffs' state law claims.

   **2.      Defendants Zalewski and Wolfe**

Upon careful examination of the arguments and record in this matter, the court finds that these defendants are entitled to summary judgment on the plaintiffs' § 1983 claim. Specifically, even assuming without deciding that Plaintiff has put forth sufficient evidence from which a jury could reasonably find that Defendants Zalewski and Wolfe violated the plaintiffs' constitutional rights, these defendants are entitled to qualified immunity on this claim. Therefore, the court focuses on this defense.

Under the defense of qualified immunity, "governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To resolve a qualified immunity

defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. Id. at 235, 242.

In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." Parrish v. Cleveland, 372 F.3d 294, 301 (4th Cir. 2004) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." Id. (citations and internal quotation marks omitted). Moreover,

> [a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.

Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (first alteration added). In analyzing this prong, a court in this district must first look to case law from the United States Supreme Court, the United States Court of Appeals for the Fourth Circuit, and the South Carolina Supreme Court, and in the absence of binding authority, the court must next consider whether the right was clearly established based on general constitutional principles or a consensus of persuasive authority. Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 543 (4th Cir. 2017). The "salient question" " 'is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged

[conduct] was unconstitutional.' " Tolan v. Cotton, 572 U.S. 650, 656 (2014) (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002)). "The Supreme Court has stressed the need to 'identify a case' or a 'body of relevant case law' where 'an officer acting under similar circumstances . . . was held to have violated the [Constitution].' " Rambert v. City of Greenville, 107 F.4th 388, 402 (4th Cir. 2024) (citations omitted).

"When a court addresses qualified immunity in the summary judgment context, it can condense its analysis." Pittman v. Nelms, 87 F.3d 116, 119 (4th Cir. 1996). In this context, the court can combine the two prongs of the qualified immunity inquiry by asking whether "the plaintiff has 'allege[d] the violation of a clearly established constitutional right.' " Id. (quoting Siegert v. Gilley, 500 U.S. 226, 231 (1991)) (alteration in original). If so, the court must then determine whether the defendant knew or should have known that his conduct was illegal. Id. (citing DiMeglio v. Haines, 45 F.3d 790, 795 (4th Cir. 1995)). The Fourth Circuit has described this inquiry as whether "a reasonable official would understand that what he is doing violates" the Constitution. Waterman v. Batton, 393 F.3d 471, 476 (4th Cir. 2005) (quoting Saucier, 533 U.S. at 202). "Although the exact conduct at issue need not have been held unlawful for the law governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest." Id. (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987); Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992)).

An examination of clearly established jurisprudence reveals no precedential authority for the situation presented here. In fact, even taking all of the facts in the light most favorable to the plaintiffs, the plaintiffs have failed to direct the court to any case or body of relevant law where officers acting under similar circumstances have been held to have violated a person's Fourth

Amendment rights.[7] In response to the defendants' motion, plaintiffs focus only on the first prong of the qualified immunity analysis, arguing that there is a dispute of fact as to whether the defendants' actions violated a constitutional right. Other than summarily stating that the defendants' actions amounted to "plain incompetence and a knowing violation of the [] Plaintiffs' rights under the Fourth Amendment," they do not provide any legal analysis supporting their position and they fail to address the second prong of the test.

The pertinent question before the court is whether a reasonable officer would know that the above-described actions (all taken in the light most favorable to the plaintiffs) were unconstitutional. Here, the crux of the alleged errors by the defendants centers on the fact that the stolen plate was a South Carolina license plate, that the defendants failed to recognize that the plate on Ashmon's vehicle was an Alaska plate, that the defendants failed to properly run the Alaska plate through NCIC before engaging in a felony stop which included handcuffing the plaintiffs, and the plaintiffs' position that Defendant Wolfe briefly pointed his firearm at the plaintiffs rather than in a "low ready" position. The plaintiffs argue that these failures resulted in a violation of their constitutional rights. However, the general law relied on by the plaintiffs as to Fourth Amendment stops is not sufficient existing precedent to have "placed the statutory or constitutional question beyond debate." Ashcroft, 563 U.S. at 741. Moreover, the mistakes by the individual defendants are not "so flagrant that the plaintiff need not point to a case precisely on point to demonstrate that an officer was on notice that their conduct violated the law." Rambert, 107 F.4th at 402; see also id. at 398 (stating that qualified immunity "applies regardless of whether the

---

[7] The court notes that although the plaintiffs refer to the incident as an arrest, the statements and actions by the officers clearly indicate that the plaintiffs were not custodially arrested; rather, they were subject to an investigatory detention. See Lytes v. Smith, 11 F. Supp. 3d 527, 539-40 (D.S.C.), aff'd, 585 F. App'x 51 (4th Cir. 2014) (explaining the difference between an investigative detention/Terry stop and an arrest ).

government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. It gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law") (internal quotation marks and citations omitted). At most, the record shows carelessness in misidentifying the Alaska plate or an error in judgment in initiating the stop prematurely, but these are the types of mistakes qualified immunity was established to protect. Thus, under the circumstances in this case, Defendants Zalewski and Wolfe are entitled to qualified immunity.

## RECOMMENDATION

Based on the foregoing, the court recommends that the defendants' motion for summary judgment (ECF No. 29) be granted.

July 21, 2025  
Columbia, South Carolina

_____  
Paige J. Gossett  
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).