IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Shauna Ashmon and Genecia Drayton,<br><br>　　Plaintiffs,<br><br>v.<br><br>Cpl. Zalenski, M.D. Tyler Wolfe, Gen. Robert Harris, Deputy Christopher Blackmon, and Richland County Sheriff's Department,<br><br>　　Defendants. | Case No.: 3:23-cv-5228-SAL<br><br><br>**ORDER** |

　　Shauna Ashmon and Genecia Drayton ("Plaintiffs") filed this civil rights case pursuant to 42 U.S.C. § 1983, alleging constitutional violations and state tort claims. Before the court is Defendants' motion for summary judgment, ECF No. 29.[1] United States Magistrate Judge Paige Gossett, pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(4) (D.S.C.), issued a Report and Recommendation ("Report"), recommending Defendants' motion be granted. [ECF No. 47.] Plaintiffs object. [ECF No. 48.]

**I. Background**

　　The facts here are largely undisputed, but where there is a dispute, the facts are taken in the light most favorable to Plaintiffs. On July 16, 2023, Defendants Zalewski[2] and Wolfe, deputies

---

[1] Although the complaint initially alleged claims against Cpl. Zalewski, M.D. Tyler Wolfe, Gen. Robert Harris, Deputy Christopher Blackmon, and the Richland County Sheriff's Department ("RCSD"), Plaintiffs have since conceded that Harris, Blackmon, and RCSD are entitled to summary judgment as to all claims, and that Zalewski and Wolfe are entitled to summary judgment on the state-law claims. Based on those concessions, Plaintiffs ask the court to "focus it[s] determination on the arguments made regarding Defendants Zalewski and Wolfe's liability under 42 U.S.C. §1983 and the qualified immunity defense." [ECF No. 35 at 15 n.3.]
[2] Although listed in the complaint as "Defendant Cpl. Zalenski," the parties agree that the correct spelling is "Zalewski."

1

with the RCSD, were on patrol when they received information from the FLOCK safety system[3] of a stolen plate with tag numbers "VED953." *Id.* at 5. According to Zalewski, the image captured of the license plate was indistinct—the letters and numbers of the plate were black and legible, but the perimeter of the plate was blurry. *Id.* He recognized the vehicle as a white Toyota Camry. *Id.* Zalewski checked the plate in the National Crime Information Center ("NCIC") system, confirmed it was stolen, and began patrolling the area for the vehicle. *Id.* It is undisputed that, on the date of the incident, the South Carolina license plate "VED953" was listed as stolen by NCIC.

Meanwhile, Plaintiffs were leaving the neighborhood where Drayton lived in Ashmon's vehicle, a white Toyota Camry, to meet some friends. *Id.* at 2. Zalewski spotted Ashmon's vehicle and advised Wolfe that he had located the vehicle with the VED953 license plate. Wolfe also received an NCIC notification that VED953 was stolen and, without further notification, activated his blue lights to assist Zalewski in conducting a "felony stop."[4] *Id.* at 7.

Ashmon was driving, and Drayton was in the front passenger seat when the officers approached the car. [ECF No. 47 at 2.] Zalewski pulled up behind their car, and Wolfe pulled in front, exited his car, and drew his sidearm.[5] *Id.* He then loudly and clearly directed Plaintiffs to put their hands out of the windows and inquired if anyone was in the back seat. *Id.* When they responded "no one," Wolfe directed Ashmon to remove the keys from the ignition and then stated, "On the ground." *Id.* Plaintiffs began unbuckling their seatbelts and exited the car. *Id.* at 3. Wolfe

---

[3] Wolfe testified that the FLOCK safety system photographs license plates using cameras on public streets. If there is an issue with a plate—for instance, it is registered to a stolen vehicle—then the system alerts officers and provides the time the photo was taken, the location of the camera taking the photo, the direction the vehicle was traveling, and the tag number.

[4] The officers stated that a "felony stop" was warranted because a stolen plate on a car indicates a high likelihood that the vehicle is stolen. [ECF No. 48 at 5.]

[5] The parties dispute whether Wolfe's weapon was held at a "low ready" position or initially pointed at the plaintiffs. [ECF No. 48 at 3–4.]

approached Drayton while Zalewski approached Ashmon. Drayton asked Wolfe if she should be on the ground and Wolfe clarified that he meant for the keys to be on the ground. As he handcuffed Drayton, Wolfe explained that she was being detained, not arrested, and would be placed in his patrol car with air conditioning due to the heat. He told Drayton that the handcuffs "come off as easy as they go on." *Id.*

Drayton stated that Ashmon had just picked her up from her house to attend a Bingo event. *Id.* at 4. Wolfe informed Drayton that the license plate on the car was listed as stolen. *Id.* at 3. He explained that the officers were "coming out like that" because a stolen tag often suggests the vehicle itself may also be stolen. *Id.* He thanked them for their cooperation and asked Drayton to give the officers time to work through the matter. Wolfe then walked over to Zalewski and Ashmon.

While Wolfe was with Drayton, Zalewski was with Ashmon. Zalewski approached Ashmon, removed the keys from her hand, and placed them on top of the Camry. *Id.* He handcuffed her and advised that the license plate was associated with a different vehicle. *Id.* at 4. Ashmon confirmed that the Camry belonged to her and that she was from Alaska. *Id.* Zalewski suggested there may have been a miscommunication, emphasized she was only being detained, and had her stand by the trunk. *Id.*

Soon after, Defendants Harris, Blackmon, and Sergeant Walmsley arrived. *Id.* At the same time, Wolfe, as he had done with Drayton, directed Ashmon to the backseat of Blackmon's car, stating he wanted to get her out of the heat and into some air conditioning. *Id.*

While Zalewski was verifying Ashmon's driver's license, Walmsley observed that Ashmon's plate was an Alaskan plate, not a South Carolina plate and questioned the need for the handcuffs. *Id.* Zalewski re-entered the plate number as an Alaska tag and confirmed it was not

stolen. *Id.* Ashmon was released from the patrol car and handcuffs. Wolfe explained that Alaska and South Carolina use the same alphanumeric plate format and that the South Carolina plate with the same number was stolen. Zalewski apologized and provided her the name of each of the officers present. *Id.* Ashmon again questioned why she was not asked for her registration and instead immediately placed in handcuffs. *Id.* Blackmon explained that officers automatically treat traffic stops involving stolen vehicles as felony stops. *Id.* Approximately five minutes elapsed from the stop to the release. *Id.*

Plaintiffs filed this civil rights action on October 19, 2023, raising both § 1983 claims and state-law claims against the individual officers and the RCSD. Plaintiffs later conceded summary judgment was appropriate for all but their Fourth Amendment claims against Zalewski and Wolfe. [ECF No. 35 at 15 n.3.] The magistrate judge found Defendants were entitled to qualified immunity on those claims and recommended granting summary judgment. [ECF No. 47 at 10–12.]

## II. Legal Standards

### A. Review of a Magistrate Judge's Report

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In response to a recommendation, any party may serve and file written objections. *See Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)). The district court then makes a de novo determination of those portions of the Report to which an objection is made. *Id.* To trigger de novo review, an objecting party must object with sufficient specificity to reasonably alert the district court of the true ground for the objection. *Id.* (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). If a litigant objects only generally, the court need not explain adopting the

4

Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

An objection is specific so long as it alerts the district court that the litigant believes the magistrate judge erred in recommending dismissal of that claim. *Elijah*, 66 F.4th at 460. Objections need not be novel to be sufficiently specific. *Id.* But "[i]n the absence of *specific* objections . . . , this court is not required to give any explanation for adopting the recommendation." *Field v. McMaster*, 663 F. Supp. 2d 449, 451–52 (D.S.C. 2009) (emphasis in original).

### B. Summary Judgment

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of proving to the court that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

### C. Qualified Immunity

Qualified immunity bars § 1983 actions against government officials in their individual capacities "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 428 (4th Cir. 2020) (quoting *D.C. v. Wesby*, 583 U.S. 48 (2018)). It gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law. *Stanton v. Sims*, 571 U.S. 3, 5 (2013) (per curiam). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate given the circumstances of the case at hand. *Pearson v. Callahan*, 555 U.S. 223, 235, 242 (2009).

Even if a court finds or assumes that a government official violated an individual's constitutional rights, the official is entitled to immunity so long as the official did not violate clearly established law. *Barrett,* 975 F.3d at 428. "Clearly established means that, at the time of the [official's] conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful. In other words, existing law must have placed the constitutionality of the [official's] conduct beyond debate." *Wesby*, 583 U.S. at 63 (internal quotation marks and citations omitted).

In analyzing this prong, a court in this district must first look to case law from the United States Supreme Court, the United States Court of Appeals for the Fourth Circuit, and the South Carolina Supreme Court, and in the absence of binding authority, the court must next consider whether the right was clearly established based on general constitutional principles or a consensus of persuasive authority. *Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533, 543 (4th Cir. 2017). The salient question is whether the state of the law at the time of an incident provided fair warning to

the defendants that their alleged conduct was unconstitutional. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). "The Supreme Court has stressed the need to 'identify a case' or a 'body of relevant case law' where 'an officer acting under similar circumstances . . . was held to have violated the [Constitution].'" *Rambert v. City of Greenville*, 107 F.4th 388, 402 (4th Cir. 2024) (citations omitted).

### III. Objections

The magistrate judge found that Plaintiffs failed to satisfy the second prong of the qualified immunity analysis. Specifically, they did not identify any case or body of relevant law where officers acting under similar circumstances have been held to have violated a person's Fourth Amendment rights. [ECF No. 47 at 9–10.] Plaintiffs object to this conclusion. Although they offer argument as to both prongs of the qualified immunity analysis, the court assumes, without deciding, the first prong is met and focuses primarily on the second prong—whether the rights at issue were clearly identified at the time of the alleged violation.

In their objections, Plaintiffs reference three cases from the Ninth Circuit Court of Appeals, which they argue defeat a finding of qualified immunity. *See* ECF No. 48 at 18–19. The court disagrees these cases place the constitutionality of Defendants actions "beyond debate" for purposes of qualified immunity.

First, Plaintiffs look to *Washington v. Lambert*, 98 F.3d 1181 (9th Cir. 1996). There, several Santa Monica police officers in police cruisers followed two suspects as they drove into the parking garage of their hotel. *Id.* at 1183. The police shone searchlights on their car, ordered them out at gunpoint, handcuffed them, and placed them in separate police cars for a period of five to twenty-

five minutes.[6] *Id.* Only after the officers frisked the two men, searched their car, and checked their identification, did they release them. *Id.* The Ninth Circuit held that qualified immunity should not apply, noting that a reasonable officer could not have believed that it was reasonable to conduct the stop in such a highly intrusive manner. *Id.* at 1194.

Second, Plaintiffs cite *Green v. City & Cnty. of S.F.*, 751 F.3d 1039 (9th Cir. 2014). In that case, officers mistakenly identified a vehicle as stolen and began a "high-risk" traffic stop where the suspect was held at gunpoint by multiple officers, handcuffed, forced to her knees, and detained for up to twenty minutes.[7] *Id.* at 1041. The Ninth Circuit again held that the defendants were not entitled to qualified immunity, holding an arrestee's right to be free from seizure or arrest without reasonable suspicion or probable cause was clearly established at time police stopped her vehicle. *Id.* at 1051–52.

Lastly, Plaintiffs reference *Chinaryan v. City of L.A.*, 113 F.4th 888 (9th Cir. 2024), *cert. denied sub nom. Cueto v. Chinaryan*, 145 S. Ct. 1927 (2025). There, believing that a vehicle was stolen, a dozen officers and a helicopter unit stopped a suspect via a "high-risk" felony stop. *Id.* at 893–96. Officers ordered the occupants out of the car at gunpoint and commanded them to lie down on the street with arms outstretched. *Id.* Roughly twenty-four minutes later, upon realizing the vehicle was not stolen, officers released the suspects. *Id.* at 896. The Ninth Circuit held that the officers were not entitled to qualified immunity, noting *Green* and *Washington* sufficiently identified the rights at issue. *Id.* at 898–99.

Even considering these cases, the court finds Zalewski and Wolfe are entitled to qualified

---

[6] The plaintiffs in *Washington* claimed the period from handcuffing to release lasted between fifteen and twenty-five minutes. *Id.* at 1183 n.2.
[7] The plaintiff in *Green* claimed that she was handcuffed for at least ten minutes and that the entire stop lasted between eighteen and twenty minutes. *Id.* at 1044.

immunity. First, Plaintiffs cite no binding authority from the Supreme Court, the Fourth Circuit, or the Supreme Court of South Carolina to support their argument that the rights at issue are clearly established. Rather, they rely on Ninth Circuit authority. However, out-of-circuit authority is generally insufficient to clearly establish a law for qualified immunity purposes. *Beard v. Town of Topsail Beach*, No. 7:19-CV-97-FL, 2021 WL 2638147, at *8 (E.D.N.C. June 25, 2021) (citing *Hill v. Crum*, 727 F.3d 312 (4th Cir. 2013)).

Second, the cases Plaintiffs rely on are factually distinguishable. For example, the plaintiffs in *Washington*, *Green*, and *Chinaryan* alleged that their stops lasted significantly longer than the five-minute stop at issue here. *See supra* Section III.A. Those plaintiffs reported stops ranging from fifteen to twenty-four minutes. Additionally, in *Chinaryan* and *Green*, the suspects were ordered to get on their knees or lie face down on the ground. Here, that was not done.

Weighing this authority in light of the applicable standard, the court reaches the same conclusion as the magistrate judge—Defendants are entitled to qualified immunity. Plaintiffs have failed to demonstrate the constitutional rights at issue were clearly established at the time of the alleged violation. Accordingly, their claims fail as a matter of law, and Defendants are entitled to summary judgment.

### IV. Conclusion

After a thorough review of the Report, the applicable law, and the record of this case, the court finds no clear error in the Report. The court reviewed de novo the parts of the Report to which Plaintiffs' objections relate. The court hereby adopts the Report and Recommendation, ECF No. 47. As a result, Defendants' motion for summary judgment, ECF No. 29, is **GRANTED**. Plaintiffs' constitutional claims fail as a matter of law and are therefore dismissed **WITH PREJUDICE**.

**IT IS SO ORDERED.**

August 19, 2025
Columbia, South Carolina

Sherri A. Lydon
United States District Judge